**HINSON SNIPES, LLP**
Princeton Forrestal Village
116 Village Blvd, Suite 307
Princeton, New Jersey 08540

By: Tracey C. Hinson, Esquire | NJ Attorney ID#: 034542002
Telephone: (609)452-7333 | Fax: (609)452-7332
Attorney for Plaintiffs

---

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ELIZABETH McNAIR,** Administrator Ad Prosequendum of the **ESTATE OF DARRELL SMITH,** and **ELIZABETH McNAIR,** Individually,<br><br>       Plaintiffs,<br><br>v.<br><br>**STATE OF NEW JERSEY, DEPARTMENT OF CORRECTIONS, COMMISSIONER MARCUS O. HICKS,** in his official and individual capacity, **ADULT DIAGNOSTIC & TREATMENT CENTER, NEW JERSEY, DEPARTMENT OF HEALTH and HUMAN SERVICES, CHARICE POWELL,** in her official and individual capacity, **GIUSEPPE MANDARA,** in his official and individual capacity, **HENRY ACEBO,** in his official and individual capacity, **OFFICER JAGDAT PERSAD,** in his official and individual capacity, **OFFICER MARZETTIE SHAMBERGER,** in his official and individual capacity, **SGT. FREDDIE RODRIGUEZ,** in his official and individual capacity, **OFFICER JOSE VALENTIN,** in his official and individual capacity, **OFFICER DAMION GILBERT,** in his official and individual capacity, **OFFICER TIMOTHY FOSTER,** in his official and individual capacity, Officer **BENNY PEREZ,** in his official and individual capacity, **SGT. TIMMIE** | CIVIL ACTION NO.<br><br><br><br><br><br>**COMPLAINT, DEMAND FOR TRIAL BY JURY, DESIGNATION OF TRIAL ATTORNEY** |

**ORANGE,** in his official and individual capacity, **SGT. PHILIP RILEY,** in his official and individual capacity, **LT. ANTONIO COSTEIRO,** in his official and individual capacity, **LT. FRANCISCO ESTRADA,** in his official and individual capacity, **JOHN DOE 1-20** and **JANE DOES 1-20** (fictitious names) in their official and individual capacities, and **XYZ UNIVERSITY CORRECTIONAL HEALTHCARE & ABC UNIVERSITY 1-10** (fictitious names),

Defendants.

## PRELIMINARY STATEMENT

This case involves the August 2019 tragic and avoidable killing of decedent **Darrell Smith**, who was beaten to death by New Jersey Department of Corrections Officers. On two separate occasions, several Correctional Officers repeatedly attacked Mr. Smith in a gang-style assault. Over the course of several days, **Mr. Smith** was tortured, beaten, kicked, punched, stomped, placed in an illegal chokehold, slammed to the ground, and had his head slammed into a glass door. He was then denied prompt and critical medical care that could have saved his life. As a result of the brutal, unprovoked beatings and the deliberate indifference to his serious medical needs, **Mr. Smith** sustained an acute, traumatic, and catastrophic brain injury which caused his tragic and untimely death on August 28, 2019.

The precipitating event giving rise to the August 23rd through August 26th, 2019 brutal beatings and abuse that killed **Mr. Smith**, was a verbal exchange between **Mr. Smith** and Correction Officers **Charice Powell** and **Guiseppe Mandara** who repeatedly called **Mr. Smith** derogatory names such as a "piece of shit" and a "faggot." The abuse took a macabre turn when Correctional staff illegally shut **Mr. Smith** in a temporary close custody/solitary confinement unit for four days as a rogue punishment, leaving him to decompensate without medical treatment for his serious and severe injuries. During that four-day time, **Mr. Smith** was denied access to the medication, water, and medical care that he needed to survive as Correctional Officers and medical staff conspired to conceal the beating and his medical condition.

By the second and/or third day following the brutal attacks on **Mr. Smith** and his illegal confinement to TCC/Constant Watch confinement, it was clear **Mr. Smith** had suffered catastrophic injuries because of the attacks. Medical records indicate **Mr. Smith** could no longer speak or respond to verbal commands or tactile stimuli and grown so weak he could not stand. On August 24th and/or 25th 2019, Correctional Officers and medical personnel found **Mr. Smith** unresponsive and propped against a wall, unable to voluntarily move his body or to hold his head up. Correctional

Officers and medical personnel did nothing to assist. Instead Correctional Officers and medical personnel shook him violently, attempted to lift his arm up which just flopped back to his side, and snatched his shoes off his feet, before leaving him helpless slouched against the wall.

For four days, until EMS was finally called, and **Mr. Smith** was transferred to the hospital, correction and medical staff walked by and entered the locked cell without helping him and ignored his obvious and fatally deteriorating state until it was too late. Although medical personnel visited **Mr. Smith** solitary confinement cell, not a single nurse, doctor or other medical provider provided him with medical care or transferred him to the hospital despite his obvious catatonic state. The number of times correctional staff, medical personal and other staff observed **Mr. Smith** while he was in dire circumstances during these four days—doing nothing to assist or aid him—shocks the conscience.

As **Mr. Smith's** body further deteriorated, he defecated and vomited on himself. Hour after hour, throughout the mornings, afternoons, and evenings of August 24th, 25th and 26th, correction officers, medical staff and others entered **Mr. Smith's** solitary confinement cell to see him lying helplessly on the floor with his head covered with a blanket, lethargic, unresponsive, stiff,

filthy, naked, and suffering. Still, no one provided medical care or transported **Mr. Smith** to the hospital to relieve his suffering.

Rather than providing the emergency assistance **Mr. Smith** desperately needed, correction officers and medical staff who could have saved his life again failed to act, initially unwilling even to touch **Mr. Smith** body, which was covered with feces and vomit. Instead of making the obviously necessary interventions, multiple staff members inexplicably watched this man suffer, fanned, and covered their noses because of the stench, then walked away.

Rather than provide the critical care required, Correctional Officers and medical staff, who knew **MR. SMITH** could not survive without medical treatment, essentially stood by and watched as he languished, deteriorated, and ultimately died six days after he was brutally attacked by correction officers. Finally, on August 26, 2019, as evening approached, EMS was summoned, and **Mr. Smith** was eventually transported to JFK Medical Center where he arrived unresponsive. By that time, nothing could be done to save his life. He was placed on life support and was declared brain dead. **Mr. Smith** was ultimately pronounced dead on August 28, 2019.

**Mr. Smith's** estate brings this action under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth, Eighth, and Fourteenth Amendments to United States Constitution, The New

Jersey Constitution, the New Jersey Civil Rights Act, N.J.S.A. §§ 10:6-1 to 2, and under state and common law and other statutory rights, specifically for the violation of **Mr. Smith's** rights, privileges and immunities as guaranteed by the Constitutions of the United States and the New Jersey, among other common law and statutory rights. Claims on behalf of **Mr. Smith's** estate are also brought pursuant to N.J.S.A. § 59:8-1, *et seq*. **Mr. Smith's** Estate seeks to vindicate his right to be free from the unlawful use of excessive force, unlawful seizure, detention, and conspiracy to violate his civil rights under the United States and New Jersey State Constitution, and other common law and statutory rights.

## THE PARTIES

1.    Decedent **Darrell Smith** (" Mr. Smith"), was an African American male and citizen of the United States, who was violently attacked and beaten to death by correction officers employed by the New Jersey Department of Corrections, who were assigned to the Adult Diagnostic and Treatment Center.

2.    At the time of the August 2019 brutal physical attacks that led to his tragic and untimely death, **Mr. Smith** was a resident under the custody, care, and control of the New Jersey Department of Corrections.

3.    Plaintiff **Elizabeth McNair ("Ms. McNair")**, is the sister of **Mr. Smith.** She was appointed as Administrator Ad Prosequendum

and Limited Administrator of his estate on December 10, 2019.

4. Defendant **State of New Jersey, Department of Corrections** (**"NJDOC"**), is a public entity that maintains an annual budget of roughly $1 billion; approximately 8,000 employees; 13 correctional institutions; and nearly 23,000 state-sentenced offenders housed in prisons, county jails and community halfway houses.

5. The **NJDOC** controls and operates the Special Treatment Unit at the **Adult Diagnostic and Treatment Center** (**"ADTC"**), located at 8 Production Way, in Avenel, New Jersey. **NJDOC** is responsible for the day-to-day operations and supervision of **ADTC**, promulgates and implements policies with respect to the inmates' safety, and is responsible for protecting the rights of inmates placed under the Department's custody and supervision.

6. The **NJDOC** has a constitutional duty, under the Eighth Amendment, to provide adequate medical treatment to those in its custody. This is a non-delegable duty.

7. The **NJDOC**, along with its Acting Commissioner, is the ultimate policymaking authority for the policies and procedures officially adopted and implemented by the employees of **NJDOC**, including the officers named in the Complaint. **NJDOC** is a public entity amenable to suit under New Jersey law.

8. Defendant **Marcus O. Hicks ("Hicks")**, at all times alleged herein, was and remains the chief executive officer of the

**NJDOC** and acted in the capacity of agent, servant, and employee of the **State**, within the scope of his employment as such, and under color of state law.

9.   As Commissioner of the **NJDOC, Hicks** is responsible for the policy, practice, supervision, implementation, and conduct of all **NJDOC** matters and is responsible for the training, supervision, and conduct of all **NJDOC** personnel, including the individual Defendants named herein. He is sued in his individual and official capacity.

10.   Defendant **ADTC** is operated jointly by the **NJDOC** and the **New Jersey Department of Health and Human Services ("NJDHHS").** Its objective is to provide treatment, education, and vocational studies to residents at its facility, with the possibility of reintegrating them into society at some point.

11.   The **ADTC,** through the **NJDOC** and the **NJDHHS,** was responsible for the supervision, training, and retention of the individually named Defendants and others.

12.   Defendant **NJDHHS,** is a State agency responsible for the provision and supervision of medical and mental health care services treatment to prisoners confined in State prisons, including the **ADTC.** Defendant **NJDHS** was responsible for policy making and the hiring, supervision, training, and retention of the individually named John Doe Defendants and others.

8

13.   Defendants **NJDOC, ADTC,** and the **NJDHS,** through their senior officials, promulgate and implement policies, including those with respect to the provision of medical and mental health care, and access to medical and mental health and other program services mandated by federal and state law.

14.   At all times alleged herein, Defendant **Charice Powell** ("**Powell**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. She is sued in her individual and official capacity.

15.   At all times alleged herein, Defendant **Giuseppe Mandara** ("**Mandara**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

16.   At all times alleged herein, Defendant **Henry Acebo** ("**Acebo**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

17.   At all times alleged herein, Defendant **Jagdat Persaud** ("**Persaud**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

18.   At all times alleged herein, Defendant **Marzettie**

Shamberger ("**Shamberger**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

19.   At all times alleged herein, Defendant **Sgt. Freddie Rodriguez** ("**Rodriguez**"), was a Sergeant employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity

20.   At all times alleged herein, Defendant **Jose Valentin** ("**Valentin**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

21.   At all times alleged herein, Defendant **Damian Gilbert** ("**Gilbert**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

22.   At all times alleged herein, Defendant **Timothy Foster** ("**Foster**"), was a Correctional Officer employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

22.   At all times alleged herein, Defendant **Benny Perez** ("**Perez**"), was a Correctional Officer employed by the **NJDOC** and

assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

23.   At all times alleged herein, Defendant **Sgt. Timmie Orange** (**"Orange"**), was a Sergeant employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

24.   At all times alleged herein, Defendant **Sgt. Philip Riley** (**"Riley"**), was a Sergeant employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

25.   At all times alleged herein, Defendant **Lt. Antonio Costeiro** (**"Costeiro"**), was a Lieutenant employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

26.   At all times alleged herein, Defendant **Lt. Francisco Estrada** (**"Estrada"**), was a Lieutenant employed by the **NJDOC** and assigned to the **ADTC** between August 23, 2019 and August 26, 2019. He is sued in his individual and official capacity.

27.   At all times relevant, Defendants **Powell, Mandara, Acebo, Persad, Shamberger, Sgt. Rodriquez, Valentin, Gilbert, Foster,** and **Perez**, were the correctional officers (**"Assaulting Officers"**), who physically attacked, assaulted, battered, used unlawful and excessive force, and committed the complained of

violations against **Mr. Smith,** and who supervised, conspired, planned, observed, lied, falsified documents, coerced witnesses, tampered with, withheld or destroyed evidence, gained knowledge of and/or failed to intervene to prevent the horrific and brutal physical assaults and unlawful use of excessive force against **Mr. Smith.**

28.  At all times relevant, **Sgt. Rodriquez, Sgt. Orange, Sgt. Riley, Lt. Costeiro,** and **Lt. Estrada,** were the supervising officers of Defendants **Powell, Mandara, Acebo, Persad, Shamberger, Valentin, Gilbert, Foster,** and **Perez,** who failed to supervise, conspired, planned, observed, lied, falsified documents, coerced witnesses, tampered with, withheld or destroyed evidence, gained knowledge of and/or failed to intervene to prevent the horrific and brutal physical assaults and unlawful use of excessive force against **Mr. Smith.**

29.  At all times herein, **John Does 1-20** (fictitious names whose identities are presently unknown) were Correctional Officers, Sergeants, Lieutenants, Supervisors, Wardens, Chiefs, Commissioners, Directors, Majors, Captains, and any other Individuals, who were acting in the capacity of agents, servants, and employees of representatives or agents of Defendants **NJDOC, ADTC,** and **NJDHS,** who were acting within the scope of their employment, and whose actions assisted and/or contributed to the

unlawful, unconstitutional and tortious conduct that result in the beating death of **Mr. Smith.**

30.  At all times alleged herein, Defendant **ABC University ("ABC")**, through its agency **XYZ Correctional Health Care** ("XYZ CHC") (names being fictitious), was an entity that contracted with the **NJDOC** and/or the **NJDHHS** to provide medical and mental health services to prisoners in State correctional facilities, including the **ADTC.**

31.  At all times alleged herein, Defendants **Jane Does 1-20** (fictitious names whose identities are presently unknown), were medical directors, physicians, physician assistants, nurses, nurse administrator(s), nurse practitioners, nurse's assistants, social workers, health service directors, and mental health clinicians, who were acting in the capacity of agents, servants, and employees of representatives or agents of Defendants **NJDOC, ADTC, NJDHHS, ABC,** and/or **CHC.** They were responsible for the provision of appropriate medical and mental health care to patients at the **ADTC,** including **Mr. Smith.** They are sued their individual and official capacity.

32.  At all times relevant, the individually named Defendants, acted under the color of state law, in the course and scope of their duties, and incident to the pursuit of their duties as officers, employees, and agents of Defendants **NJDOC, ADTC,**

**NJDHHS**, **ABC**, and/or **CHC**, in engaging in the conduct described herein.

33.   The individually named Correctional Officers who were involved in the abuse and beating death of **Mr. Smith** and the violation of his constitutional rights are referred to collectively herein as the "**Assaulting Officers**" or "**Officer Defendants**."

34.   The individually named Supervisors are collectively referred to as the "**Supervising Defendants**."

35.   This Complaint alleges that Defendants, by virtue of their wrongful conduct, are liable to Plaintiffs jointly and severally for actual damages, attorney fees, and punitive damages as the Court sees fit.

## Jurisdiction & Venue

This action arises under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, § 1985, §1988, the New Jersey State Constitution, the New Jersey Civil Rights Act, N.J.S.A. §§ 10:6-1 et seq., as well as the New Jersey Torts Claim Act, N.J.S.A. 59:1-1, et seq., and common law.

This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. §§ 1331 and 1343, as one or more causes of action arise under the Constitution, laws, or treaties of the United States, and the amount in controversy exceeds $75,000.

Furthermore, this Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**VENUE**

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred in this district or is the district in which the parties reside.

**Factual Allegations**

**The Beatings, Torture and Homicide of Mr. Mr. Smith**

1.   On August 23, 2019, at approximately 7:05 to 7:20 a.m., the Assaulting Officers, **Powell**, **Mandara**, **Acebo**, **Persad**, **Shamberger**, **Sgt. Rodriquez**, **Valentin**, **Gilbert**, **Foster**, **Perez**, and **John Does 1-20**, participated in an unlawful, unprovoked, brutal, and deadly gang-like beating of **Mr. Smith.**

2.   The Assaulting Officers repeatedly beat, kicked, punched, stomped, placed **Mr. Smith** in an illegal chokehold, slammed him to the ground, and slammed his head into a glass door.

3.   As a result of the brutal, unprovoked beatings and the deliberate indifference to his serious medical needs, **Mr. Smith** sustained an acute, traumatic, and catastrophic brain injury which caused his tragic and untimely death on August 28, 2019.

4.    The precipitating event giving rise to the horrific beating death of **Mr. Smith** was a verbal exchange between **Mr. Smith** and Defendants **Powell** and **Mandara** on August 23, 2019, during which **Powell** and **Mandara** repeatedly hurled insults at **Mr. Smith**, threatened him with bodily harm, and called him derogatory names such as a "piece of shit" and a "faggot."

5.    This unavoidable tragedy occurred during the morning meal when **Powell** and **Mandara** accused **Mr. Smith**, who worked in the kitchen at **ADTC**, of stealing left-over breakfast food items, specifically peanut butter, and bananas. **Mr. Smith**, a young and healthy 50-year-old man, was attacked and beaten to death by correctional officers over left-over peanut butter and bananas.

6.    According to multiple eyewitnesses, after serving breakfast to the residents, **Mr. Smith** asked a resident to bring some left-over peanut butter and bananas to his room on the West Unit while he continued to clean the kitchen area.

7.    **Powell** observed the resident bringing the tray to **Mr. Smith's** room and yelled to him: "Stop. Don't put that in there, bring it down here." After directing the resident to place the tray on her desk, **Powell** entered **Mr. Smith's** room and removed food items which she distributed to residents.

8.    Shortly thereafter, **Mr. Smith** left the breakfast area to return the food cart to kitchen. According to witnesses, as he

walked past **Powell's** desk, he stopped and attempted to retrieve the food trays from **Powell's** desk to place in the food cart to return them to the kitchen.

9.   Unprovoked, **Powell** loudly yelled "Get away from my desk. Get away from the desk. Get the f... k away from my desk."

10.   **Powell** continued to verbally assault **Mr. Smith**, calling him a "thief" and a "f....t," which she repeated, apparently in response to a comment from **Mr. Smith**, by stating, "You like little boys right? So, you a f....t!"

11.   Several witnesses report seeing, and hearing **Powell** verbally abuse and use abusive language towards **Mr. Smith** on multiple prior occasions, calling him a "homo," "homosexual ass," "f....t," and ".... rapist."

12.   These witnesses state it was clear **Powell** hated **Mr. Smith** and long "had it in for him." Prior to his beating death, **Mr. Smith** told a group therapist at **ADTC** that Powell had threatened his life.

13.   According to witnesses, **Powell** exhibits a deep lack of respect for residents and frequently tells them to: "Write it up I don't give a f... k," when they complained about her mistreatment.

14.   Upon information and belief, **Powell** has been "written up" multiple times because of the hatefulness, verbal abusive language, and lack of respect she exhibits toward residents.

15.   In fact, it appears **Mr. Smith** horrific beating death had no impact on **Powell** and did not change her behavior toward residents. Residents reported she bragged about **Mr. Smith's** death.

16.   **Powell** was reassigned immediately following the beating death of **Mr. Smith.** She was recently returned to the same unit but was removed or transferred in less than an hour after residents reported her abusive behavior and expressed that they felt threatened, feared retaliation for speaking out about Mr. Smith's death, and feared for their lives.

17.   In response to **Powell's** verbally abusive and derogatory comments, **Mr. Smith** apparently muttered under his breath and continued to the kitchen with the food cart. After returning the food cart to the kitchen, **Mr. Smith** began to walk back to the West Unit. As he walked past **Powell** and **Mandara's** desk, he allegedly stated words to the effect, "You can't go into my room and just take stuff out of my room."

18.   Eyewitnesses report **Mandara** became enraged, left his desk, walked toward **Mr. Smith**, and repeatedly yelled, "So what you're a thief. You're a f..... g thief, a f..... g thief."

19.   Upon information and belief, **Mr. Smith** responded to **Mandara** by stating that since breakfast was over, he could not be stealing.

18

20.  **As Mr. Smith** continued toward the entrance door to the West Unit, **Mandara** followed closely behind him, repeatedly yelling the vilest insults and threats at **Mr. Smith**, including "you're a motherfucking homo." "You dumb ass bitch." "You're a piece of shit." "Your "mother is a piece of shit." "What are you gonna do," and "I'll f... k you up."

21.  Witnesses report that **Mr. Smith**, who is extremely soft spoken, said words to the effect, "I don't disrespect you at all I don't speak to you," to **Mandara** and continued walking toward the exit for the West Unit, in an effort to get out of harm's way.

22.  **Mandara** became increasingly enraged. He ran back to his desk, removed his utility belt, threw it on the chair in front of his desk, and pursued **Mr. Smith** the approximately 15-20 feet from his desk to the West Unit entrance door, shouting "what you gonna do you piece of shit. You're a piece of shit." "Come on I will fuck you up." I'll f... k you up, you piece of shit."[1]

23.  Multiple witnesses saw **Mandara** tackled and pushed **Mr. Smith** into the hallway between the inner and outer door to the West unit, pressing **Mr. Smith** against the wall, and slamming his

---

[1] According to witnesses, this was not the first time Correction Officers, including **Powell** and **Mandara**, threatened residents on the West Unit with physical violence.

head into the thick glass of the door, before tackling him to the ground. As **Mr. Smith** laid prone on the ground, **Mandara** continued to pummel him, repeatedly punching him in his back, head, and ribs, as he screamed, "I'll f..k you up you asshole" and "I'll beat the shit out of you."

24.   According to witnesses, at that point, **Powell** sounded an alarm, "Code 33 west officer involved," which requires correction officers to arm themselves with riot helmets, shields, and batons to quell a disturbance. She then yelled, "Lock in! Everyone, lock the f... k in now!"

25.   After the code was called, several Officers, including, but not limited to, **Powell, Acebo, Persad, Shamberger, Sgt. Rodriquez, Valentin, Gilbert, Foster, Perez**, and **John Does 1-20**, arrived and immediately joined in the brutal physical attack on **Mr. Smith** such that they placed him in an illegal chokehold, grasped, manhandled, shoved, and dragged **Mr. Smith**, and body slammed him to the ground. The Assaulting Officers repeatedly stomped, punched, and kicked **Mr. Smith** in his back, head, face, legs, ribs, and sides, as he lay prone and helpless on the ground.

26.   In an attempt to coverup and shield their actions from residents and from being caught on camera, the Assaulting Officers, including, but not limited to, **Mandara, Acebo, Persad**, and

**Shamberger**, dragged **Mr. Smith** to an area behind a pole which was a blind spot for cameras.

27. Upon information and belief, **Mandara, Powell, Acebo Persad, Shamberger, Sgt. Rodriquez, Valentin, Gilbert, Foster, Perez,** and some **John Does** personally struck **Mr. Smith.**

28. Other **John Does** were present during the brutal physical assault and failed to intervene or protect **Mr. Smith.** Upon information and belief, at least one **John Doe** restrained **Mr. Smith** while the Assaulting Officers beat him.

29. After physically assaulting **Mr. Smith**, and in furtherance of their conspiracy to conceal the nature of and severity of **Mr. Smith's** injuries, the Assaulting Officers and their immediate supervisors refused to call for medical assistance, despite knowing the severity of **Mr. Smith's** injuries and despite knowing that the denial of medical care would have potentially life threatening implications for **Mr. Smith.**

30. After physically assaulting **Mr. Smith**, the Assaulting Officers and their immediate supervisors forced him to walk to the **ADTC** infirmary. The walk from the West Unit to the infirmary is extensive and meanders down a long outdoor pathway. This was done in retaliation and to cause further injury, pain, suffering, and humiliation to **Mr. Smith.**

31.   To   further   punish   **Mr.   Smith**   for   his   perceived
disrespect, Defendant **Lt. Estrada** ordered Defendant **Sgt. Rodriquez**
to unlawfully lock **Mr. Smith** in a Temporary Close Custody/solitary
cell without due process.

32.   **Mr. Smith** was confined to the TCC/Constant Watch cell
without any legal authority and indeed contrary to **NJDOC** rules and
regulations without any opportunity to contest his unauthorized
lock-in and the attendant deprivations of liberty.

33.   Upon information and belief, **Jane Doe 1**, a nurse, wrote
and/or fabricated a report in which she falsely claimed **Mr. Smith**
was   stable   and   fit   for   transfer   to   the   TCC/Constant   Watch
confinement cell.

### The Second Physical Assault

34.   The Assaulting Officers, including, but not limited to
**Mandara,   Acebo,   Persad,   Shamberger,   Foster**,   and   **John   Doe   1**,
physically assaulted **Mr. Smith** a second time between Friday, August
23rd and Sunday, August 25th, 2019, while he was in the D Unit,
TCC/Constant Watch and/or the infirmary.

35.   The Assaulting Officers placed **Mr. Smith** in an illegal
chokehold and repeatedly kicked, punched, slammed, stomped, and
struck various parts of his body, including his head, with their
fists  and  hands.  This  time,  the  brutal  attack  left  him  with

catastrophic injuries that left him in an unresponsive and catatonic state.

36.  Once again, to coverup and shield their actions from being caught on camera, the assaulting Defendants, viciously attacked **Mr. Smith** in an area of the D Unit which was a blind spot for cameras.

37.  The physical assault(s) on **Mr. Smith** were so brutal, he involuntarily defecated on himself.

38.  From approximately 7:30 a.m. on Friday, August 23rd until approximately 5:21 p.m., on Monday, August 26th, 2019, the Assaulting Officers and their immediate supervisors kept **Mr. Smith** locked inside the TCC/Constant Watch D-Unit cell apparently to teach him a lesson for the "offense" that his objection to being called a "thief" and a "f....t" and being subjected to vilest of insults caused.

39.  Despite the severity of his injuries, **Mr. Smith** received no treatment whatsoever at the infirmary or while locked in TCC/Constant Watch, leaving him to decompensate without medical treatment for his serious and ultimately fatal injuries.

**Deliberate Indifference Serious Medical Needs:**

40.  After again brutally attacking **Mr. Smith**, the Assaulting Officers and their immediate supervisors, **Sgt. Rodriquez, Sgt.**

**Orange, Sgt. Riley, Lt. Costeiro, Lt. Estrada,** and **John Does 1-20,** again locked him in TCC/Constant Watch, denied him critical medical care, and left him comatose and lying his own waste for four days.

41.    During that four-day period, **Mr. Smith** was denied access to the medication, water, and medical care that he needed to survive as Correctional Officers and medical staff conspired to conceal the beating and his medical condition.

42.    By the second or third day following the brutal assaults illegal confinement, it was evident **Mr. Smith** had suffered catastrophic injuries during the attacks. **Mr. Smith** could no longer speak or responded to verbal commands or tactile stimuli and had grown so weak he could not stand.

43.    Although correctional and medical staff visited **Mr. Smith** TCC/Constant Watch confinement cell, not a single nurse, doctor or other medical provider, or correctional staff, provided him with medical care or transferred him to the hospital despite his obvious deteriorating medical condition and catatonic state.

44.    On or about August 25, 2019, Correctional and medical staff found **Mr. Smith** propped against a wall in an unresponsive and catatonic state, unable to voluntarily move his body or hold his head up. Correctional and medical staff did nothing to assist **Mr. Smith**. Instead they shook him violently, attempted to lift

24

his arm up which just flopped back to his side, and snatched his shoes off his feet, before leaving him helpless and slouched against the wall.

45. As **Mr. Smith's** body further deteriorated, he defecated and urinated on himself.

46. Hour after hour, throughout the mornings, afternoons, and evenings of August 23rd, 24th, 25th and 26th, correctional and medical staff entered the TCC/Constant Watch confinement cell and found **Mr. Smith** him lying helplessly on the floor with his head covered with a blanket, lethargic, unresponsive, stiff, filthy, naked, and suffering. Still, no one provided medical care or transported **MR. SMITH** to the hospital to relieve his suffering.

47. For four days, until EMS was finally summoned, and **Mr. Smith** transferred to the hospital, correction and medical staff walked by and entered the locked cell without helping and ignored his obvious and fatally deteriorating state until it was too late.

48. The number of times correctional and medical staff observed **Mr. Smith's** while he was in dire circumstances during those four days—doing nothing to assist or aid him—shocks the conscience.

49. Instead of making obvious and necessary medical interventions, correctional and medical staff ordered a suicide blanket for **Mr. Smith** despite zero evidence **Mr. Smith** was

suicidal, all in furtherance of their conspiracy to deny him critical medical care in order to conceal the brutal physical attacks and the severity of **Mr. Smith's** injuries.

50. Rather than providing the emergency assistance **Mr. Smith's** desperately needed, correctional and medical staff who could have saved his life again failed to act, initially unwilling even to touch **Mr. Smith's** body, which was covered with feces, urine, and vomit.

51. Instead of making the obviously necessary interventions, correctional and/or medical staff inexplicably watched **Mr. Smith** suffer, fanned their faces, covered their noses because of the stench, then walked away.

52. Upon information and belief, Defendant **Jane Doe 1**, a nurse, or physician, witnessed the severely injured **Mr. Smith** either in the infirmary and/or the TCC/Constant Watch confinement cell, yet offered no help or assistance. Instead, **Jane Doe 1** covered her nose in scorn, made derogatory remarks about the filthy condition **Mr. Smith** was in, turned, and walked out of the TCC/Constant Watch solitary confinement cell.

53. Upon information and belief, Defendants **Jane/John Does** nurses, physicians, or medical personnel, also entered the TCC/Constant Watch solitary confinement cell, saw **Mr. Smith's** condition, and failed to provide him with medical care.

54.  No physical examination was performed on **Mr. Smith** and his vital signs were not checked.

55.  No treatment was rendered to **Mr. Smith** for his lethargic condition, his inability to respond to verbal commands, and his inability to move voluntarily.

56.  **Mr. Smith** was not provided any pain medication.

57.  **Mr. Smith** was not immediately taken to the hospital or any emergency care facility.

58.  Instead of providing the critical care required, Correctional and medical staff, who knew **Mr. Smith** could not survive without urgent medical treatment, essentially stood by, and watched as he languished and deteriorated until it was too late to save him.

59.  Finally, on August 26, 2019, as evening approached, when it became clear that the brutal attacks and **Mr. Smith's** injuries and severe medical condition could no longer be swept under the rug or covered up, EMS was summoned.

60.  When EMS workers arrived at 5:27 p.m., they found **Mr. Smith** unconscious, unresponsive, seizing, and unable to stand or walk without assistance. **Mr. Smith's** circulation motor sensory condition was documented as unconscious/syncope/dizziness.

61.  Further evidence of **Mr. Smith's** severe and traumatic brain or head injury was documented by EMS. His total Glasgow Coma

Scale was registered at 5. Eye movement was 1, verbal response was 1, and motor response was 2. A Glasgow Coma scale between 3-8 indicates a severe brain injury.

62. **Mr. Smith** was eventually transported to JFK Hospital where he arrived unresponsive. On arrival at JFK, **Mr. Smith** was placed on a ventilator due to his severe brain injury. By that time, nothing could be done to save his life.

63. A CT scan of the head revealed an ischemic stroke, documented as "findings consistent with a large recent left middle cerebral artery [MCA] territory infarct with severe edema and mass effect." A Neuro Critical Care consultant at JFK opined **Mr. Smith's** stroke likely started during the weekend after the altercation.

64. **Mr. Smith** was ultimately pronounced dead on August 28, 2019, six days after the brutal attacks. He was 50 years old.

65. As described above, Defendants subjected **Mr. Smith** to cruel, unusual, inhumane, and degrading treatment. The Assaulting Officers, including, but not limited to **Powell, Mandara, Acebo, Persad** and **Shamberger**, bragged about killing **Mr. Smith.**

66. Despite **Mr. Smith's** objectively serious medical condition, the Assaulting Officers, individually named Defendants, their immediate supervisors, and medical staff, were deliberately indifferent to **Mr. Smith's** immediate medical needs in that they

failed to make sure **Mr. Smith** received proper and timely medical treatment and/or transfer to an outside hospital.

67.  As described above, Defendants consciously disregarded and were deliberately indifferent to **Mr. Smith's** safety, and well-being.

68.  As described above, Defendants consciously disregarded and were deliberately indifferent to **Mr. Smith's** objectively serious medical condition following the subject physical assaults.

69.  Certainly, **Mr. Smith's** injuries were critical and of an objectively serious nature.

70.  As a result of the Assaulting Officers' excessive use of force, **Mr. Smith** suffered catastrophic fatal injuries; however, the failures of Defendants to request, authorize, make arrangements and provide transportation for, and/or provide timely and adequate medical care and treatment to **Mr. Smith's** caused him to maliciously and gratuitously suffer additional and prolonged pain and suffering and resulted in his death.

71.  **Mr. Smith's** medical condition was of such gravity that it can be objectively considered a serious medical condition. By ignoring his serious medical condition for treatment, Defendants, acted with deliberate indifference.

72.   By ignoring all available signs that **Mr. Smith** was in severe pain and physical distress, Defendants acted with deliberate indifference.

73.   As set forth above, the subject assaults and incidents, as well as the Assaulting Officers, supervisors, and medical staff on duty who ignored, acquiesced, joined and/or were complicit in same, constituted an unnecessary, unreasonable, and excessive use of force and deliberate indifference to **Mr. Smith's** serious medical needs.

74.   Prior to the brutal physical assaults, **Mr. Smith** was a healthy 20-year-old man with no history of seizures or strokes.

75.   The Assaulting Officers subjected **Mr. Smith** to unlawful, unjustified, and excessive force, and unnecessary and wanton infliction of pain.

76.   At no point during the time periods mentioned herein did **Mr. Smith** neglect or refuse an order of a correction officer or violate a directive, rule, or regulation of the **NJDOC**.

77.   At no point during the time periods mentioned herein did **Mr. Smith** resist or disobey any lawful command of a correction officer.

78.   At no point during the time periods mentioned herein did **Mr. Smith** offer violence to any officer or resident at **ADTC**.

79.  At no point during the time periods mentioned herein did **Mr. Smith** injure or attempt to injure **NJDOC** property.

80.  At no point during the time periods mentioned herein did **Mr. Smith** attempt to escape.

81.  At no point during the time periods mentioned herein did **Mr. Smith** attempt to lead or take part in a revolt or insurrection.

82.  At no time prior to using unlawful and excessive force upon **Mr. Smith** did any of the Assaulting Officers issue any verbal command or warning to **Mr. Smith** or use any other non-physical means of control on **Mr. Smith**.

83.  Instead, the Assaulting Officers immediately began striking **Mr. Smith** in the head and all over his body without cause or justification and out of vengeance and malice.

84.  The Assaulting Officers lacked any form of justifiable cause or reason to use excessive physical force and/or inflict blows upon **Mr. Smith** in order to control **Mr. Smith** or the subject location, enforce discipline, or maintain order as **Mr. Smith** was not involved in a fight, posed no threat to the Assaulting Officers, and did not disregard a lawful order.

85.  The Assaulting Officers' actions were malicious, served no legitimate penological interest, and was grossly disproportionate to the circumstances then and there existing.

86. Several Correctional officers at **ADTC**, including the Assaulting Officers, the individually named Defendants, and **John Does 1-20**, not only participated in and/or observed the brutal beatings, they failed to intervene to prevent the unlawful and unjustified use of excessive force upon **Mr. Smith**, and entered into a conspiracy and an agreement to conceal it by sanitizing the scene of the assaults and falsifying their reports about it.

87. None of the Assaulting Officers, their immediate supervisors, the individually named Defendants, witness officers, or medical staff truthfully reported what they did, saw and heard. Instead, these Defendants engaged in a cover up in which lies, and false accounts, were proffered to shift blame from the Assaulting Officers to **Mr. Smith** by falsely claiming **Mr. Smith** attacked **Mandara**, which is a blatant lie.

88. Upon information and belief, some, or all, of these Correctional officers participated in multiple unlawful physical attacks on residents at **ADTC** and inmates at other **NJDOC** Correction facilities prior to the brutal physical assaults that killed **Mr. Smith.**

89. Upon information and belief, a number of those beatings were the subject of disciplinary reports and lawsuits. This behavior and its frequency showed a custom, usage, or practice of unlawful conduct in the **NJDOC**.

90.   Further, some or all those beatings occurred under the supervision of policymakers such as Defendant **Hicks,** and supervisors such as **Lt. Estrada, Lt. Costeiro, Sgt. Rodriguez, Sgt. Orange, Sgt. Riley** and **John Doe Supervisors 1-10,** who either knew or should have known of their occurrences but failed to do anything about them.

91.   The supervising Defendants were either personally involved and/or had actual knowledge of the beatings and the denial of medical care to **Mr. Smith.**

92.   None of these officers intervened to protect **Mr. Smith** despite the physical assaults lasting for several minutes and even days.

93.   The Assaulting Officers and supervisors at **ADTC** exhibited the following general unlawful behavior: the ignoring of residents' complaints of threatened bodily harm from correctional officers, the unlawful beatings of residents, failure to intervene to prevent the unlawful use of excessive force on residents, and concealing and attempting to conceal unlawful officer conduct via evidence clean-up and the falsification of reports.

94.   An autopsy was conducted by the Newark Medical Examiner's Office on August 31, 2019, and a neuropathology examination was conducted in September 2019. Despite this, the completion of the autopsy report was significantly delayed due to

33

the State and **NJDOC** investigators' failure to provide the medical examiner with the investigative file, including reports, videos, and other material related to the beatings that killed **Mr. Smith** despite multiple requests from the ME's office.

95. **Mr. Smith's** family waited nearly one year before they were provided with some, not all the details surrounding his death. To date, the autopsy report has not been publicly released.

96. As a result of the brutal beatings, **Mr. Smith** sustained a severe catastrophic brain injury, as well as other injuries that ultimately caused his death.

97. A timely Notice of Claim was served upon the State of New Jersey, Department of Treasury on September 30, 2019. More than six (6) months have elapsed since service of Plaintiffs' Notice of Claims, and the claims remain unresolved.


## COUNT I

### (Excessive Force - (42 U.S.C. § 1983)
### (Eighth Amendment & Fourteenth Amendments & Common Law)

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

98. All prisoners, including those serving a sentence of incarceration, those held in jail pending trial, and those, like **Mr. Smith**, who are involuntarily committed, have a right to be

free from excessive force by prison and jail staff.

99.  On two separate occasions between August 23, 2019 and August 26, 2019, the Assaulting Officers, **Powell**, **Mandara**, **Acebo**, **Persad**, **Shamberger**, **Sgt. Rodriquez**, **Valentin**, **Gilbert**, **Foster**, **Perez**, and **John Does 1-20**, repeatedly attacked **Mr. Smith** in a gang-style assault. They slammed him to the ground, beat, kicked, punched, stomped, placed him in an illegal chokehold, and slammed his head into a glass door.

100. The Assaulting Officers, acting under color of law, used unlawful and unreasonable excessive physical force on **Mr. Smith** without provocation, legal cause, or justification, and with purposeful and malicious intent to cause harm to **Mr. Smith** and did in fact cause his tragic and untimely death.

101. The Assaulting Officers' negligent, reckless, and intentional acts of physically assaulting **Mr. Smith,** and their use of unreasonable and excessive force against him without justification or provocation, showed deliberate indifference for the life and safety of **Mr. Smith.**

102. The Assaulting Officers' negligent, careless, reckless, and intentional act of conspiring with **Powell, Mandara,** and each other to use unlawful and excessive force and their failure to intervene and prevent the unlawful and unreasonable use of force, showed deliberate indifference for the life and safety of **Mr.**

**Smith**.

103. The conduct of the Assaulting Officers constituted excessive force in violation of the United States and New Jersey Constitutions.

104. The actions of the Assaulting Officers were objectively unreasonable and were undertaken negligently, intentionally, and with malice, depravity, willfulness, and reckless indifference to **Mr. Smith's** constitutional rights.

105. By their conduct, the Assaulting Officers deprived **Mr. Smith** of his right to be free from malicious, sadistic, excessive, and unreasonable force under the Fourth and Fourteenth Amendment of the United States Constitution, the New Jersey State Constitution, and under the New Jersey Civil Rights Act.

106. The aforesaid misconduct was part of a widespread practice at the **NJDOC** and **ADTC** that, although not expressly authorized, constituted a custom or usage of which the **NJDOC, ADTC**, and Supervising Defendants were aware.

107. As a direct and proximate result of Defendants' unlawful, unjustified, and unreasonable use of excessive force, as well as the **NJDOC** and **ADTC's** custom, policies and practices, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

## COUNT II
### (Common Law Assault and Battery)

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

108. By physically attacking and severely injuring **Mr. Smith**, the Assaulting Officers, **Mandara, Powell, Perez, Sgt. Rodriquez, Foster, Acebo, Gilbert, Valentin, Persad**, and **John Does 1-20**, acting in their individual and official capacity as employees of the **NJDOC**, and within the scope of their employment, committed an unlawful, unwarranted, negligent, careless, and reckless assault and battery upon **Mr. Smith** that resulted in his tragic and untimely death.

109. Defendants, acting under color of law, did intimidate, assault, batter, and use excessive physical force on **Mr. Smith** without provocation, legal cause, or justification, and with purposeful and malicious intent to cause harm to **Mr. Smith** and did in fact cause his tragic and untimely death.

110. By assaulting and intimidating **Mr. Smith**, the Defendants intended to put him in a reasonable and immediate apprehension of such contact in reasonable and did in fact put **Mr. Smith** in immediate apprehension of a harmful or offensive contact with his body.

111. The actions of Defendants constituted an offensive physical contact made without the consent of **Mr. Smith.**

112. The actions of Defendants were undertaken recklessly, negligently, willfully, and wantonly, and intentionally.

113. The **NJDOC** and **ADTC**, as the employer of Defendants, are responsible for their wrongdoing under the doctrine of <u>respondent superior</u> and the New Jersey Tort Claims Act, <u>N.J.S.A.</u> § 59-2-2, et seq.

114. As a direct and proximate result of Defendants' unlawful, unwarranted, assault and battery, and their misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

## <u>COUNT III</u>

### **(<u>False Imprisonment - 42 U.S.C. § 1983 and Common Law</u>)**

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

115. After brutally assaulting Mr. Smith, Defendants **Powell, Mandara, Acebo, Persad, Shamberger, Sgt. Rodriquez, Valentin, Gilbert, Foster, Perez, Sgt. Orange, Sgt. Riley, Lt. Costeiro, Lt. Estrada, John Does 1-20,** and **Jane Does 1-20,** acting in their individual and official capacity as employees of Defendant **NJDOC,**

**ADTC, and NJDHHS,** and, within the scope of their employment, unlawfully imprisoned **Mr. Smith**, who was innocent of any wrongdoing, in the TCC/Constant Watch solitary confinement unit for four (4) days without probable cause.

116. Instead of providing **Mr. Smith** with prompt medical care for the severe injuries he sustained in the brutal assaults, Defendant Estrada ordered Rodriquez to unlawfully confine **Mr. Smith** in the TCC/Constant Watch in the D unit, even though **Mr. Smith** posed no threat to Defendants, himself, or others.

117. By their unlawful conduct, Defendants, under color of state law, deprived **Mr. Smith** of his right life and liberty without due process under the Fourth and Fourteenth Amendment to the United States Constitution, and under New Jersey State law, including <u>N.J.A.C.</u> 10A:5-7.1.

118. Defendants had a duty to prevent the unlawful confinement and depravation of liberty imposed on **Mr. Smith** but failed to do so. Instead, Defendants conspired with each other to lie, fabricate evidence, and falsify the official reports relating to the brutal assaults on **Mr. Smith** to justify his illegal confinement and deprivation of his right to life and liberty without due process.

119. Defendants are liable for their failure to take any reasonable steps to protect **Mr. Smith** from the illegal confinement

and deprivation of his right to life and liberty without due process, despite having ample evidence, time, and opportunity to do so.

120. The unlawful confinement and deliberate indifference to **Mr. Smith's** serious medical needs were the acts of Defendants jointly, and Defendants are jointly and severally liable for damages to **Mr. Smith.**

121. In all the foregoing, Defendants acted with negligent, careless, reckless, callous, and deliberate indifference to **Mr. Smith's** constitutionally protected rights.

122. By their unlawful conduct and abuse of authority, Defendants, under color of law, deprived **Mr. Smith** of his right to life and liberty without due process of law.

123. By their conduct, Defendants, under color of law, deprived **Mr. Smith** of his right to be free from unreasonable seizure under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as under common law.

124. The **NJDOC, ADTC, and NJDHSS,** as the employer of Defendants, are responsible for their wrongdoing under the doctrine of Respondeat Superior and the New Jersey Tort Claims Act, <u>N.J.S.A.</u> § 59-2-2, et seq.

125. As a direct and proximate result of Defendant Officers' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

**COUNT IV**
**(Conspiracy 42 U.S.C. § 1983 & Common Law-All Defendants)**

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

126. In a massive conspiracy to cover up the true nature of the vicious assaults and the severity of **Mr. Smith** injuries, the Assaulting Officers and their immediate supervisors made up a false cover story to hide what they did, repeatedly lied in Correction Department records, lied to investigators, attempted to coerce witnesses, other **ADTC** staff, and medical personnel to fabricate, alter, delete, change, and destroy the incident reports and medical records, and upon information and belief, even created a phony injury to one of the Assaulting Officers.

127. The Assaulting Officers, Supervisory Defendants, and John/Jane Doe Medical Staff engaged in a conspiracy to commit the horrific physical abuse upon **Mr. Smith** and to cover up the true nature of the brutal physical attacks that resulted in **Mr. Smith's** tragic and untimely death.

128. Following the severe beatings that killed **Mr. Smith,** and in attempt to cover up and/or conceal the unlawful conduct complained of herein, the **Assaulting Officers, Supervising Defendants, John Does 1-20,** and **Jane Does 1-20,** including warden, infirmary sergeant, TCC officers, and **John/Jane Doe** medical staff, acting individually and/or in concert and conspiracy with one another, all intentionally failed to report and/or misrepresented the events leading up to and during the **Assaulting Officers'** unlawful, unjustified and unreasonable use of excessive force during the subject physical assaults, each parties' involvement in same, the catastrophic injuries and severe condition of **Mr. Smith** as a result of the brutal assaults.

129. In an attempt to cover up and/or conceal the unlawful conduct complained of herein, the **Assaulting Officers, Supervising Defendants, John Does 1-20,** and **Jane Does 1-20,** acting individually and/or in concert and conspiracy with one another, drafted, executed and filed knowingly false statements and reports wherein these Defendants and their supervisors dishonestly stated **Mr. Smith** posed a danger to officers, others and/or the facility; that **Mr. Smith** failed to obey a lawful order; and that **Mr. Smith** caused and/or threatened to cause serious physical injury to himself, an officer, or departmental property. None of this was true.

130. Defendants took specific and intentional action to cover-up their unlawful conduct, including but not limited to conspiring to create a false narrative of what transpired, knowingly drafting and filing false official reports, gave false statements, testimony to superiors, investigators and prosecutors, failed to report the incident to local, state and/or federal authorities, destroyed physical evidence, falsified medical records, prevented **Mr. Smith** from receiving timely and necessary medical care and treatment in an effort to conceal his serious and life threatening injuries, coerced and/or attempted to coerce residents and other correctional and medical staff to falsify records, altered and concealed evidence, and prevented others from truthfully documenting and/or photographing **Mr. Smith's** injuries.

131. The **Assaulting Officers**, their supervisors, **John Does 1-20**, and **Jane Does 1-20**, conspired, agreed, drafted, executed, and filed knowingly false statements and reports wherein Defendants falsely stated **Mr. Smith** was not injured; that **Mr. Smith** was suicidal; that **Mr. Smith** deteriorating condition resulted from seizures; and made other knowingly false statements about the incident in official reports, and in disciplinary and/or criminal proceedings commenced against them.

132. Upon information and belief, as part of said conspiracy and cover-up, Defendants confiscated **Mr. Smith** soiled clothing and

immediately discarded and/or laundered same to remove any evidence of blood, DNA evidence, and other physical evidence.

133. Upon information and belief, as part of said conspiracy and cover-up, a Notice of Disciplinary Infraction was issued to **Mr. Smith**. To justify their actions and in furtherance of their conspiracy, the **Assaulting Officers**, **Supervising Defendants**, and **John Does 1-20**, falsely claimed **Mr. Smith** attacked **Mandara** and that reasonable force was utilized to gain control of **Mr. Smith**.

134. As part of said conspiracy and cover-up, Defendants provided false statements to the physicians at JFK Medical Center, **NJDOC** brass and State investigators, claiming **Mr. Smith** injuries were the result of seizures despite the fact he did not have a seizure disorder or prior history of seizures, and failed to provide a true account of the nature of **Mr. Smith's** injuries which was necessary for his physician to make an appropriate diagnosis and provide the appropriate medical care.

135. As part of said conspiracy and cover-up, the **Assaulting Officers, Supervising Defendants, John Does 1-20,** and **Jane Does 1-20,** including wardens, infirmary sergeant, TCC officers, medical staff (including Physicians, Physician Assistants, Nurse Administrators, Nurse Practitioners, Nurses, and Health Services Director, denied **Mr. Smith** access to timely and appropriate medical

care and treatment and were deliberately indifferent to his obvious and objectively serious and critical medical condition.

136. In furtherance of their conspiracy, and despite multiple requests from the medical examiner's office, the **Assaulting Officers, Supervising Defendants, John Does 1-20,** and **Jane Does 1-20,** failed to turn over the investigative reports, medical records, videos, and other documents and materials related to the physical assaults on **Mr. Smith** to the Medical Examiner's Office so that the autopsy report could be completed. This resulted in an eleven-months delay in the completion of the autopsy report.

137. **Mr. Smith** family was kept in the dark and was not told what happened to him or how he died for eleven months.

138. Upon information and belief, as part of said conspiracy and cover-up, the assaulting and supervising Defendants have threatened and retaliated against witnesses who reported the brutal beating death of **Mr. Smith.**

139. Out of fear that Defendants were attempting to cover up the true nature of brutal physical assaults and **Mr. Smith's** death, multiple witnesses wrote to the New Jersey Attorney General and the United States Justice Department demanding an investigation. They provided detailed statements outlining their eyewitness accounts of the circumstances leading up to the violent beating(s) that caused **Mr. Smith's** death.

140. These witnesses, despite being afraid for their own safety, risked everything to contact **Mr. Smith's** family and several media outlets to relay what they witnessed, voice their concerns, and to report the retaliation they have experienced, and provided written statements. These witnesses live in constant fear of being harmed and retaliated against.

141. All individually-named and identified Defendants as well as **John Does 1-10**, and **Jane Does 1-10**, under color of State law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, psychologically torment, threaten, falsely imprison, deny medical treatment and intimidate **Mr. Smith** in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the United States Constitution, including the rights: to be free from unlawful, unreasonable, and excessive use of force; to be free from cruel and unusual punishment; to be free from the delay and denial of medical attention; and to be free from unnecessary and wanton infliction of pain.

142. Defendants, as well as currently unknown John Does, and John Doe/Jane Supervisors, medical directors, physicians, physician assistants, nurses, nurse administrator(s), nurse practitioners, nurse's assistants, social workers, health service directors, and mental health clinicians, conspired to commit the

horrific acts visited upon **Mr. Smith**, gaining knowledge of the plan and observing its occurrence, conspired to deprive **Mr. Smith** of medical treatment for his obvious and serious medical needs, and further conspired to protect the actual officers committing the physical and psychological offenses and keep confidential the plan, conspiracy and conduct of all involved officers.

143. As set forth above, the individually named Defendants, all acting under the color of law, willfully conspired with one another to deprive **Mr. Smith** of his constitutional rights, including but not limited to his right to be free from cruel and unusual punishment; to be free from the use of unreasonable and excessive force; to be free from unreasonable delay and denial of medical care; to be free from harassment and intimidation; to be free from reprisal for exercising his First Amendment rights; to be free from malicious and retaliatory attacks; to be free from conduct intended to chill his speech; to be free from unlawful confinement/imprisonment; to be free from false and subversive statements and proceedings designed to cover up the misconduct of others; to equal protection of the law; to due process; to equal privilege and immunities under the law; to associate and speak freely; and to have access to and seek redress in the courts.

144. In complicity with said conspiracy, each Defendant, acting in their own self-interest to avoid criminal prosecution,

civil liability and/or employment-related disciplinary proceedings, submitted false reports and/or statements to cover up the true nature of the brutal assaults and to support and corroborate the fabricated allegations lodged against **Mr. Smith**, or was aware that a subordinate or peer submitted a false report and/or statement and failed to report same.

145. Defendants had knowledge that a 42 U.S.C. §1983 conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, and neglected or refused to do so. With due diligence, Defendants could have promptly reported the subject events to superiors and to duly authorized investigators. Their failure to do so allowed the conspiracy to continue, evidence to be destroyed, and the truth suppressed.

146. Had Defendants complied with the law and furnished truthful information to medical providers and/or authorities about their conduct and/or the violent and malicious beatings **Mr. Smith** endured at the hands of the Assaulting Defendants, the conspiracy would not have succeeded to the extent that it did and **Mr. Smith** would not have been denied critical medical care that could have saved his life.

147. Defendants took numerous overt steps in furtherance of such conspiracy, as set forth above.

148. The **STATE** and **NJDOC**, as employer of these Defendants, are responsible for their wrongdoing under the doctrine of Respondeat Superior and the New Jersey Tort Claims Act, <u>N.J.S.A.</u> § 59-2-2, et seq.

149. As a result of said conspiracy and/or Defendants' furtherance of the conspiracy, Defendants deprived **Mr. Smith** of the rights and privileges afforded by the Constitution of the United States of America.

150. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

### COUNT V
### (Failure to Intervene - 42 U.S.C. § 1983 & <u>N.J.S.A.</u> 10:6-2

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

151. At all times alleged herein, Defendants **Lt. Estrada, Lt. Costeiro Sgt. Rodriguez, Sgt. Orange, Sgt. Riley, Powell, Perez, Foster, Acebo, Gilbert, Valentin, Persad, John Does 1-20,** and **Jane Does 1-20,** were officers and medical personnel at **ADTC,** who participated in and/or had knowledge of and failed to intervene in

the excessive use of force, lock-in, TCC/Constant Watch solitary confinement of, and denial of adequate medical care to **Mr. Smith** on August 23rd through August 26th 2019.

152. The individually named Correctional Officers, Supervisors, and John/Jane Doe medical personnel, were present during the physical attack and unlawful use of excessive force on **Mr. Smith**. All watched the brutal assaults and allowed them to continue, failing to step in to protect **Mr. Smith.**

153. The individually named Correctional Officers, Supervisors, and medical Defendants were either personally involved and/or had actual knowledge of the beatings, the cruel and unusual punishment, and the denial of medical care to **Mr. Smith** obvious and serious medical needs. None of these Defendants intervened to protect **Mr. Smith** despite the beatings that lasted for minutes each day and the egregious denial of medical care that lasted four days.

154. Defendants had a duty to intervene to prevent the use of intervene, summon help, or take other precautionary measures to prevent and/or stop the brutal and deadly use of excessive force on **Mr. Smith** but failed to do so.

155. Defendants knew **Mr. Smith** faced a serious risk of substantial harm and had a reasonable opportunity to intervene to

prevent the brutal and deadly assault but chose not to do so. Thus, they are liable for the harm he suffered.

156. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

<u>**COUNT VI**</u>
<u>**(42 U.S.C. § 1983 Cruel and Unusual Punishment**</u>
<u>**(Against All Defendants)**</u>

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

157. Under the color of State law, the **Assaulting Officers'** reckless and/or intentional acts including but not limited to the excessive use of force on **Mr. Smith**, constituted cruel and unusual punishment, which demonstrated deliberate indifference for the life and safety of **Mr. Smith**.

158. By their conduct, the **Assaulting Officers** deprived **Mr. Smith** of his right to be free from conditions posing a substantial risk of serious harm under the Eighth and Fourteenth Amendments to the United States Constitution and the New Jersey State Constitution.

159. The Assaulting Officers, acting under color of law, subjected Mr. Smith to the unlawful use of excessive force, denied him access to timely, appropriate and necessary medical care, were deliberately indifferent to his objectively serious medical condition and needs following the subject beatings, were deliberately indifferent to excessive risks to **Mr. Smith's** health or safety, and did gratuitously force **Mr. Smith** to walk from the location of the beatings to the infirmary and then the TCC/Constant Watch solitary confinement cell with a malicious intent to cause him further pain and suffering.

160. By reason of the foregoing, Defendants reckless, deliberately indifferent and/or intentional acts of physically assaulting, securing, confining and/or restraining **Mr. Smith**, and denying medical care for his serious medical needs, without justification or provocation, showed deliberate indifference for the life and safety of Plaintiff.

161. The supervising Defendants knew that the pattern of abuse and neglect against residents, described above, existed at **ADTC** prior to and including the time of **Mr. Smith's** beating death. They created or allowed the continuance of the custom under which residents were physically assaulted and illegally and excessively placed in TCC/Constant Watch solitary confinement and deprived of adequate medical care.

162. The supervising Defendants' failure to take measures to curb this pattern of abuse and neglect constituted acquiescence in the known unlawful behavior of their subordinates and deliberate indifference to the rights and safety of the inmates in their care and custody, including **Mr. Smith**. The Supervising Defendants' conduct was a substantial factor in the continuation of such abuse and neglect and a proximate cause of the constitutional violations alleged in this Complaint and of **Mr. Smith's** resultant injuries and death, hereinbefore alleged.

163. The Individual Defendants acted under the color of state law and in their individual and official capacities and within the scope of their respective employments as **State/NJDOC, NJDHHS,** and **XYZ CHS** officers, agents, employees, and/or contracted personnel. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Said Defendants acted willfully, knowingly, and with the specific intent to deprive **Mr. Smith** of his constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

164. Defendants **State of New Jersey**, **NJDOC**, **NJDHHS,** and **XYZ CHS**, permitted, tolerated, and were deliberately indifferent to a pattern and practice of abuse and neglect at **ADTC**, as described in the above paragraphs, by **ADTC** officers and/or **XYZ CHS** employees,

agents, and contracted personnel at the time of **Mr. Smith's** beatings and homicide. This widespread tolerance of abuse and neglect constituted corporate policy, practice, and custom, and was a proximate cause of **Mr. Smith's** death and the damages alleged herein.

165. Defendant **XYZ CHS**, through its officers and employees, acting under the pretense and color of law, deliberately implemented a pattern and practice of delaying treatment, inadequately staffing facilities, hiring unqualified personnel, and failing to adequately train personnel in order to cut costs and maximize profits.

166. Defendant **XYZ CHS** implemented its policies with deliberate indifference as to their known, obvious, and proven consequences for patients: serious injury and death resulting from delayed, denied, and improper treatment. Defendant **State**, through **NJDOC** and **NJDHHS**, permitted, tolerated, and were likewise deliberately indifferent to the consequences of **XYZ CHS's** profit-maximizing policies, of which they knew or should have known at the time of **Mr. Smith's** death.

167. Defendant **XYZ CHS's** and the State's indifference to the implications for ADTC residents of **XYZ CHS's** policies, practices, and customs were proximate causes of **Mr. Smith's** injuries and death, and his resultant damages, hereinbefore alleged.

168. By pursuing, permitting, tolerating, and sanctioning persistent and widespread policies, practices, and customs pursuant to which **Mr. Smith** was abused, neglected, and killed, the **State**, through the **NJDOC**, **ADTC**, **NJDHHS**, and **XYZ CHS** deprived **Mr. Smith** of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

169. By reason of the foregoing, and by confining **Mr. Smith** to a TCC/Constant Watch solitary confinement cell, denying him access to adequate medical and mental health care, failing to provide medical and mental health treatment, and/or exhibiting deliberate indifference to **Mr. Smith's** rights by not acting on information which indicated that unconstitutional acts were occurring, the Assaulting Officers, supervising Defendants, and medical Defendants deprived **Mr. Smith** of rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

170. The Assaulting Officers, supervising Defendants, and medical Defendants acted at all relevant times hereto willfully, wantonly, maliciously, and/or with such reckless disregard of

consequences as to reveal a conscious indifference to the clear risk of death or serious injury to **Mr. Smith** that shocks the conscience. As a direct and proximate result of these violations of **Mr. Smith's** constitutional rights, he suffered the damages hereinbefore alleged.

171. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

<u>**COUNT VII**</u>

<u>**(42 U.S.C. § 1983 – 8th Amendment Deliberate Indifference to Serious Medical Needs – All Defendants)**</u>

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

172. The Eighth Amendment to the Constitution of the United States prohibits cruel and unusual punishment. The failure to treat, and unreasonable delay(s) in treating, inmates with serious medical conditions results in a worsening of their medical problems, and otherwise inflicts unnecessary pain and suffering.

173. The **Assaulting Officers, Supervising Defendants,** and **John Does 1-20,** under color of state law, failed to provide medical assistance and/or interfered in the efforts of others to provide

medical assistance to **Mr. Smith**, while he was in their custody, with deliberate indifference to **Mr. Smith's** medical needs and in violation of his rights under the Eighth Amendment to the United States Constitution.

174. Specifically, after beating **Mr. Smith** and leaving him in a catatonic state, the **Assaulting Officers** and the **Supervising Defendants** employed the use of the TCC/Placement Solitary Confinement cell with constructive and actual knowledge of **Mr. Smith's** severe injuries and diminished neurological function, and used that condition to further their goal of covering up the true nature of the beatings and **Mr. Smith's** declining medical condition, thereby depriving **Mr. Smith** of the necessary medical treatment he required for his objectively serious medical needs.

175. Defendants, including all individually named and identified defendants as well as John/Jane Doe, and XYZ, ABC Defendants, with actual and constructive knowledge of the harms visited upon **Mr. Smith**, failed to intervene, or provide any medical attention to him. Had Defendants intervened, **Mr. Smith** would not have died.

176. All Defendants acted with deliberate indifference, knowingly disregarding, and ultimately taking advantage of the serious physical condition of **Mr. Smith** and failing after the horrific beatings to provide or offer any medical treatment or

assistance to him.

177. Defendants **Jane Doe 1-20,** acting under color of law, were deliberately indifferent to **Mr. Smith's** objectively serious medical condition following the beatings in that they only gave a cursory, superficial and fleeting visual check of **Mr. Smith** when he was brought into the infirmary before approving him as fit for transfer to TCC/Constant Watch solitary confinement; failed and/or refused to examine **Mr. Smith** in his TCC/Constant Watch solitary confinement cell upon request; was reckless in the instance; and otherwise failed to act in the instance despite being actually aware of a substantial risk that serious harm will come of **Mr. Smith** due to their failure to act.

178. By virtue of their licensing and training, Defendants **Jane Does 1-20** were consciously aware of the serious nature of **Mr. Smith's** injuries and did ignore, refuse, deny and/or delay **Mr. Smith's** medical care and treatment; was complicit in and/or direct participant in the cover-up of the subject beating; did knowingly draft and file false medical and injury reports and/or gave false sworn statements in an effort to cover-up evidence of the **Assaulting Officers'** excessive use of force and other misconduct; did fail to report what they saw and heard to local, state and/or federal authorities; destroyed physical evidence; prevented **Mr. Smith** from receiving timely and necessary medical care and

treatment; prevented others from truthfully documenting and/or photographing **Mr. Smith's** injuries; and was otherwise deliberately indifferent as set forth above.

179. The aforesaid misconduct was part of a widespread practice at the **State, NJDOC, ADTC,** and **XYZ CHS,** although not expressly authorized, constituted a custom or usage of which Defendants' superiors were aware.

180. The conduct of Defendants in the instance was so grossly incompetent, inadequate, and excessive it shocks the conscience, and was so intolerable to fundamental fairness, and was maliciously and sadistically used to cause further harm to **Mr. Smith.**

181. The individual Defendants were part of an entrenched culture of violence and deliberate indifference to medical needs by officers and healthcare workers towards residents and prisoners, of which their immediate supervisors as well as **NJDOC, ADTC, NJDHHS,** and **XYZ CHS** administrators were aware, including but not limited to Defendants, **Commissioner Hicks, John Doe Warden, NJDOC Deputy of Security,** and **John/Jane Doe Health Services Director.**

182. Upon information and belief, Defendants have been involved in similar incidents prior to August 23rd through August 26th, 2019, for which no corrective action has been taken against

them, including but not limited to the incident involving Mr. Smith described above.

183. The United States Supreme Court has repeatedly held that prison officials have a constitutional obligation to provide adequate medical care. An inmate must rely on prison authorities to treat his medical needs; if they fail to do so; those needs will not be met. In the worst cases, such a failure may produce the physical torture and the lingering death **Mr. Smith** endured.

184. As set forth above, Defendants, acting under color of law, were deliberately indifferent to **Mr. Smith's** objectively serious medical condition following the beatings in that she failed to examine and treat **Mr. Smith** upon his presentation to the infirmary and in TCC/Constant Watch solitary confinement despite the fact that (a) **Mr. Smith** showed clear signs of a neurological injury and/or cognitive deficit; (b) it would be readily apparent to a layperson that **Mr. Smith** had difficulty breathing and was exhibiting other symptoms of a neurological injury and/or cognitive deficit; (c) **Mr. Smith** was unresponsive to verbal stimuli; (d) **Mr. Smith** had defecated and vomited on himself; (e) **Mr. Smith** had numerous bruises, scratches and abrasions all over his body; and (f) **Mr. Smith** was unable to physically stand, walk, or make voluntary movements.

185. Defendants failed to provide **Mr. Smith** with any much less adequate medical care. **Mr. Smith** suffered and died because he was not provided adequate medical care. Defendants' failure to provide **Mr. Smith** with basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in a civilized society.

186. As a result of the foregoing, said defendant deprived **Mr. Smith** of his rights secured by the Constitution of the United States of America and has damaged him thereby.

187. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

## COUND VIII
### (42 U.S.C. § 1983 Supervisor Liability)

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

188. Under the color of State law, the Supervising Defendants acted with deliberate indifference to the conditions posing a substantial risk of serious harm to **Mr. Smith** in failing to supervise the Assaulting Officers, and in conspiring with them, planning, observing, gaining knowledge of and/or failing to intervene or prevent the horrific acts visited upon **Mr. Smith.**

189. Defendants **Sgt. Rodriquez, Sgt. Orange, Sgt. Riley, Lt. Costeiro**, and **Lt. Estrada**, were the supervising officers of Defendants **Powell, Mandara, Acebo, Persad, Shamberger, Valentin, Gilbert, Foster**, and **Perez**, were, at all relevant times, supervisory personnel at **ADTC**, for the **State, NJDOC and NJDHHS**, with oversight responsibility for the Assaulting Officers, **John Does 1-20**, and **Jane Does 1-20**. The Supervising Defendants were responsible for the training, instruction, supervision, and discipline of the Assaulting Officers who violated **Mr. Smith's** constitutional rights in the manner described above.

190. These Supervising Defendants knew, or in the exercise of due diligence should have known, that the inappropriate, unlawful, and tortious conduct of the Assaulting Officers against **Mr. Smith's** was likely to occur.

191. These Supervising Defendants knew or should have known of the pattern or practice of similar wrongdoings by these and other officers occurring at **ADTC** and in like facilities by guards and officials against residents.

192. The violent beating death of **Mr. Smith** and the inhumane treatment he received after the beatings, and the failure to provide him with medical care for his serious medical needs are not isolated events. They are part of a pattern of incidents of similar illegal use of excessive force, inhumane and illegal

treatment of residents and inmates by **NJDOC** correction officers and medical and mental health providers, and it is neither the first nor the last such incident that resulted in death. In fact, these failures and abhorrent practices have been and are now the object of both substantial media attention and government investigation.

193. These horrific incidents were the direct result of systemic deficiencies in the training, supervision and discipline of New Jersey Department of Correctional Officers and personnel, including the individual named Defendants, that began long before the vicious and deadly assaults on **Mr. Smith** and continue to this day. These violations, committed by one or more agents, servants, employees, or officers of Defendants, affected an unlawful seizure and unlawful use of force upon **Mr. Smith** that resulted in his premature death.

194. Despite prior knowledge of pattern and practice and/or of the specific measures taken in this case against **Mr. Smith**, these Supervising Defendants failed to take preventive and remedial measures to guard against the constitutional violations committed by all individually named Defendants herein. Had they taken appropriate action, **Mr. Smith** would not have been tortured and beaten to death. The failure to act by the Supervising Defendants considering their level of knowledge constitutes

reckless, willful, and wanton, intentional misconduct entitling **Mr. Smith** punitive damages.

195. The failure of these Supervising Defendants to train, supervise and discipline all individually named Defendants herein amounted to gross negligence, deliberate indifference, reckless and/or intentional misconduct which directly caused the deprivations suffered by plaintiff.

196. This misconduct by the Assaulting Officers and individually named Defendants was undertaken pursuant to the custom, policy, and practice of the **State**, the **NJDOC, ADTC and NJDHHS** in that:

   a. As a matter of custom, policy and practice, the **State**, the **NJDOC, ADTC,** and **NJDHHS** directly encourages and supports the type of misconduct at issue here by failing to adequately train, supervise and control its Correctional Officers, such that its failure to do so manifests deliberate indifference;

   b. As a matter of custom, policy and practice, the **State**, the **NJDOC, ADTC,** and **NJDHHS** facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct.

   c. **State**, the **NJDOC, ADTC,** and **NJDHHS'** policy makers are aware of and condone the types of misconduct at issue here, evidenced by their disciplinary inaction and failure to report and address misconduct by **NJDOC** Correctional Officers, including the Assaulting Officers, and medical personnel; and,

   d. The **State**, the **NJDOC, ADTC,** and **NJDHHS,** failed to

act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries and death in this case.

197. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

<u>**COUNT IX**</u>
<u>**(Common Law Negligence)**</u>

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

198. Defendants **Powell, Mandara, Acebo, Persad, Shamberger, Valentin, Gilbert, Foster,** and **Perez, John Does 1-20,** and **Jane Does 1-20,** acting in their individual and official capacities as employees of the **State, NJDOC, ADTC,** and **NJDHHS,** and within the scope of their employment, negligently injured **Mr. Smith and caused his death.**

199. Defendants **State, NJDOC, ADTC,** and **NJDHHS** ADTC, as employer of the Assaulting Officers, are responsible for their wrongdoing under the doctrine of respondeat superior and the New Jersey Tort Claims Act, N.J.S.A. § 59-2-2, et seq.

200. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith**

sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

## COUNT X
## (Negligent Hiring, Training, Supervision, & Retention

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

201. Defendants **Hicks**, the Supervising Defendants, **John Doe Supervisors 1-20**, and **Jane Doe Supervisors 1-20**, as supervisory personnel at **ADTC**, owed a duty of care to **Mr. Smith** to prevent the conduct alleged, which foreseeably caused his torture and beating death.

202. Upon information and belief, Defendants **Hicks**, the Supervising Defendants, **John Doe Supervisors 1-20**, and **Jane Doe Supervisors 1-20**, as supervisory personnel at **ADTC**, acting in their individual and official capacities as employees of the **State**, **NJDOC**, and **NJDHHS**, and within the scope of their employment, through their negligence, recklessness and deliberate indifference in screening, hiring, training, disciplining, supervising, and retaining the Assaulting Officers, **John Does 1-20**, and **Jane Does** 1-20, proximately caused **Mr. Smith's** torture and beating death.

203. Defendants **State**, **NJDOC**, and **NJDHHS**, as employer of all individually named Defendants herein, are responsible for their

wrongdoing under the doctrine of respondent superior, and the New Jersey Tort Claims Act, N.J.S.A. § 59-2-2, et seq.

204. As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

<u>**COUNT XI**</u>
**(Violation of the New Jersey Civil Rights Act - N.J.S.A. 10:6-1 & 2)**

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

205. Defendants, under color of statute, ordinance, reputation, custom and usage have deprived and caused **Mr. Smith** to be subjected to the deprivations of rights, privileges and immunities secured by the New Jersey Constitution and law of the State of New Jersey, including his right to liberty, his right to be secure as a person against unreasonable searches and seizures, his right to be free from unlawful detention, his right to privacy, and his right to freedom of association secured to his by the New Jersey State Constitution.

206. Defendants, acting under color of law, intentionally deprived **Mr. Smith** of civil rights by, inter alia, using unlawful

and excessive force against him, denying him medical care for his serious medical needs, unlawful detention, failing to intervene to prevent the unlawful use of excessive force against him, conspiring and agreeing to violate his civil rights, and violating his right to privacy.

207. Defendants' acts were done in knowing violation of **Mr. Smith's** legal and constitutional rights and caused **Mr. Smith** excruciating physical injuries, conscious pain and suffering, mental pain and suffering and emotional distress, and death.

208. Defendants' deprivation of **Mr. Smith's** civil rights violates the New Jersey Constitution and give rise to **Mr. Smith's** claims for redress under N.J.S.A. 10:6-1 et seq.

209. Based on the aforesaid conduct, Defendants, acting under color of law, deprived, and interfered with the exercise or enjoyment by **Mr. Smith** of the rights guaranteed to him by the New Jersey Constitution including, but not limited to:

        a)    The right to enjoy and defend life and liberty;

        b)    The right to pursue and obtain safety and happiness;

        c)    The right to due process of law;

        d)    The right to equal protection of the laws;

        e)    The right to any other natural and unalienable right retained by the people;

        f)    The right to privacy; and

      g)   The right to be free of cruel and unjust punishment.

210.  As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, **Mr. Smith** sustained severe, catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

## COUNT XII
### (Negligent and Intentional Infliction of Emotional Distress)

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

211. When the individual Defendants brutally assaulted, tortured, injured, unlawful detained, denied **Mr. Smith** medical care for his serious medical needs, which ultimately killed him, Defendants acted intentionally or recklessly with deliberate disregard of a high degree of probability that emotional distress will follow.

212. Defendants' conduct was extreme and so outrageous in character and degree as to go beyond all possible bounds of decency. Defendants' conduct was so atrocious, it is utterly intolerable in a civilized community.

213. As a direct and proximate result of Defendants' conduct and abuse of authority detailed above, **Mr. Smith** sustained severe,

catastrophic, and deadly injuries, experienced excruciating conscious pain and suffering over a six-day period, and ultimately died.

## COUNT XIII
## Punitive Damages

Plaintiffs adopt and re-alleges the allegations set forth above as though fully set forth herein.

214. The acts of the Individually named Defendants as set forth herein, were willful, wanton, malicious and oppressive, to entitle the Plaintiff to an award of punitive damages against Defendants Officers.

**WHEREFORE**, Plaintiffs respectfully prays that this Court:

a.   Assume jurisdiction over this action;

b.   Award Plaintiffs actual damages, expenses and other economic losses;

c.   Award compensation damages for injury, mental anguish, and emotional distress, in an amount to be determined by the enlightened conscience of an impartial jury;

d.   Award punitive (exemplary) damages against the individual Defendants, to the extent permitted by law, and award fees and expenses;

e.   Declare that Defendants violated **Mr. Sm**ith's rights under the United States Constitution;

f.   Award attorney's fees, pursuant to 42 U.S.C. $1988 and any other applicable provision(s) of state and federal law, and costs; and,

g.   Award such other and further relief as the Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that TRACEY C. HINSON is hereby designated as trial counsel in the above-captioned litigation for the firm of Hinson Snipes, LLP.

## JURY DEMAND

**PLEASE TAKE NOTICE** that the Plaintiffs demand a trial by jury as to all issues so triable.

## NOTICE OF UTILIZATION OF TIME-UNIT BASIS

**PLEASE TAKE NOTICE** Plaintiffs intend to utilize the time-unit basis for calculating unliquidated damages in Plaintiffs' closing statement to the jury and the Court.

*HINSON SNIPES, LLP*

/s/ Tracey Hinson
By:  Tracey C. Hinson, Esquire
     Attorney for Plaintiffs

Date: 1/27/21