UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ELIZABETH MCNAIR, individually and as administrator ad prosequendum of the ESTATE OF DARRELL SMITH,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF NEW JERSEY et al.,**<br><br>Defendants. | Civ. No. 2:21-cv-1291 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.**

This action arises out of the death of Darrell Smith from fatal injuries he sustained while he was an inmate at the Special Treatment Unit at East Jersey State Prison in Avenel, New Jersey. Presently before the Court are motions brought by Defendants State of New Jersey, New Jersey Department of Corrections, Adult Diagnostic and Treatment Center, Special Treatment Unit, New Jersey Department of Health, Marcus Hicks, and Raymond Royce (collectively, the "Moving Defendants") to partially dismiss the Second Amended Complaint and strike certain paragraphs therein. ECF Nos. 107, 108. The Court did not hear oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Moving Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part, and their motion to strike is **DENIED**.

**I.   BACKGROUND**

The following facts are recounted from the Second Amended Complaint ("SAC"), ECF No. 100, and accepted as true for the purpose of resolving the motion to dismiss.

Darrell Smith ("Smith"), now deceased, was an inmate at the Special Treatment Unit at East Jersey State Prison in Avenel, New Jersey. SAC ¶ 2. Smith's sister, Plaintiff Elizabeth McNair, individually and as the designated administrator ad prosequendum of Smith's estate ("Plaintiff"), brings this civil rights action under 42 U.S.C. § 1983 against the following Defendants in connection with Smith's death: the State of New Jersey, New Jersey Department of Corrections, Adult Diagnostic and Treatment Center, Special Treatment Unit, New Jersey Department of Health, Rutgers University Correctional Health Care, Marcus Hicks, Raymond Royce, and other named prison officials, corrections

officers, physicians, nurses, and medical personnel (collectively, "Defendants"). *See id.* ¶¶ 10-54.

Defendant Special Treatment Unit ("STU"), along with Defendant Adult Diagnostic and Treatment Center ("ADTC"), is a medical and mental health treatment facility jointly operated by Defendant New Jersey Department of Corrections ("DOC") and Defendant New Jersey Department of Health ("DOH") to house civilly committed residents and inmates confined in New Jersey state prisons. *Id.* ¶¶ 14-15. At the time of the alleged incidents leading to Smith's death, Defendant Marcus Hicks ("Hicks") served as Commissioner of the DOC and Defendant Raymond Royce ("Royce") served as the Warden or Administrator of the STU and ADTC. *Id.* ¶¶ 16-17. Hicks and Royce were responsible for the day-to-day operations of the two facilities and for the supervision and training of the corrections officers staffed there. *Id.* ¶ 18. Hicks and Royce are sued in their individual and official capacities. *Id.* ¶¶ 16-17. The Court refers collectively to this subset of Defendants as the "Moving Defendants."

The events leading up to Smith's death began on August 23, 2019, when Smith attempted to retrieve his breakfast tray from a corrections officer's desk after the officer removed it from Smith's room while he was in the kitchen area. *Id.* ¶¶ 61-63. The officer yelled at Smith to get away from her desk, verbally harassed him, accused him of being a thief, and called him derogatory names, to which Smith responded, "You can't go into my room and just take stuff out of my room." *Id.* ¶¶ 59-73. Enraged by Smith's response, a second corrections officer began to verbally harass Smith and then slammed Smith's head against the door, tackled him to the ground, and repeatedly punched him in his back, head, and ribs. *Id.* ¶¶ 74-79. The first corrections officer called a "Code 33" alerting other corrections officers "to arm themselves with riot helmets, shields, and batons" to respond to the disturbance. *Id.* ¶ 80. Multiple corrections officers arrived at the incident and joined in physically attacking Smith, such that they placed him in a chokehold, shoved, dragged, and slammed him to the ground, and repeatedly stomped, punched, and kicked him in his back, face, legs, ribs, and sides as he laid there. *Id.* ¶ 81. The officers refused to call for medical assistance and placed him in a solitary confinement cell despite knowing the severity of his injuries. *Id.* ¶¶ 87, 90. Over the course of the next four days, the same corrections officers physically attacked Smith a second time, rendering injuries so severe that Smith was unresponsive and had defecated, urinated, and vomited on himself. *Id.* ¶¶ 92-104. He continued to be denied medical care and was left to deteriorate in his cell before finally being transported to the hospital on August 26, 2019. *Id.* ¶¶ 105-106. Smith arrived at the hospital unresponsive with a severe brain injury and was placed on a ventilator. *Id.* ¶ 134. He died of his injuries two days later, on August 28, 2019. *Id.* ¶ 137.

Based on the foregoing facts, Plaintiff commenced this action on January 28, 2021, and filed the SAC on November 16, 2021. ECF Nos. 1, 100. The SAC raises seventeen, somewhat overlapping causes of action against Defendants for constitutional rights violations under § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1

*et seq.*, and for tort claims under New Jersey law. *See generally* SAC ¶¶ 206-372. The constitutional rights violations under § 1983 and the NJCRA include claims for excessive force (Count I), unreasonable seizure (Count III), conspiracy (Count VI), failure to intervene (Count VII), cruel and unusual punishment (Count VIII), deliberate indifference to serious medical needs (Count IX), supervisory liability (Count X), violations of due process (Count XII), violations of the NJCRA generally (Count XIII), and First Amendment retaliation (Count XIV). The state law tort claims include claims for assault and battery (Count II), unreasonable seizure (Count III), conspiracy (Count VI), medical malpractice (Count IV), negligence (Count V), negligent hiring and supervision (Count XI), negligent and intentional infliction of emotional distress (Count XV), wrongful death and survivorship (Count XVI), and punitive damages (Count XVII).

In lieu of filing an Answer, the Moving Defendants moved to partially dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF No. 108. They contemporaneously moved to strike paragraphs 182 through 205 of the SAC pursuant to Rule 12(f) for being unrelated to Plaintiff's claims. ECF No. 107. The remaining non-moving Defendants—Rutgers University Correctional Health Care and the named prison officials, corrections officers, physicians, nurses, and medical personnel—filed Answers to the SAC. Defendants Timothy Foster, Jose Valentin, Charice Powell, Giuseppe Mandara, Benny Perez, Jagdat Persad, Damian Gilbert, Marzettie Shamberger, Timmie Orange, and Freddie Rodriguez, all of whom were allegedly employed by the DOC as corrections officers or supervising sergeants at the STU and ADTC, join in the Moving Defendants' motion to strike.[1] ECF Nos. 122-126, 131-133, 136, 138.

## II. DISCUSSION

### A. Moving Defendants' Rule 12(b)(6) Motion to Dismiss

The Court turns first to the Moving Defendants' Rule 12(b)(6) motion to dismiss. ECF No. 108. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

---

[1] The Court declines to permit Defendant Timmie Orange ("Orange") to join in the Moving Defendants' partial motion to dismiss. Orange sought to join the motion by way of a one-page letter after he had already filed an answer to the SAC and after the Moving Defendants and Plaintiff had already briefed the motion. *See* ECF Nos. 118, 136.

As stated above, the SAC raises claims under § 1983, the NJCRA, and New Jersey law in seventeen, somewhat overlapping counts for compensatory and punitive damages. The Moving Defendants advance four arguments as to why some of the claims alleged against them must be dismissed.

First, the Moving Defendants argue, and Plaintiff concedes, that the § 1983 and NJCRA claims against them must be dismissed because they are not "persons" subject to suit under either statute.[2] Defs. Mov. Br. at 5-7, ECF No. 108-1; Pl. Opp. Br. at 24-25, ECF No. 121. To state a claim for relief under § 1983, a plaintiff must demonstrate that the conduct in the complaint was committed by a person acting under color of state law and that such conduct deprived the plaintiff of a right secured by the Constitution. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). It is well-established that states and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-71 (1989); *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990) (explaining that *Will* established that "an entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983."). Similarly, "a suit against a state official in his or her official capacity" for monetary damages "is a suit against the official's office" and is "no different from a suit against the State itself." *Will,* 491 U.S. at 71.

Here, the State of New Jersey; the DOC, DOH, ADTC, and STU which operate as an arm of the State by virtue of being funded by, controlled by, and accountable to the State; and Hicks and Royce in their official capacities, are plainly not "persons" amenable to suit under § 1983. *See Endl v. New Jersey*, 5 F. Supp. 3d 689, 697-98 (D.N.J. 2014) (State of New Jersey, the DOC, and named DOC officers in their official capacity are not "persons" subject to suit under § 1983); *see also Correa-Martinez v. Rahway Hosp.*, No. 21-11076, 2021 WL 5195690, at *2 (D.N.J. Nov. 8, 2021) (state prisons are not "persons" subject to suit under § 1983). Plaintiff's § 1983 and NJCRA claims for excessive force (Count I), unreasonable seizure (Count III), conspiracy (Count VI), failure to intervene (Count VII), cruel and unusual punishment (Count VIII), deliberate indifference to serious medical needs (Count IX), supervisory liability (Count X), violations of due process (Count XII), violations of the NJCRA generally (Count XIII), and First Amendment retaliation (Count XIV), to the extent they are alleged against the State of New Jersey, DOC, DOH, ADTC, STU, and Hicks and Royce in their official capacities, are dismissed with prejudice accordingly.

---

[2] The NJCRA is "intended to provide New Jersey citizens with a state analogue to [ ] § 1983 actions . . . ." *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018). To that end, Courts in this District "have interpreted the [NJCRA] in terms nearly identical to its federal counterpart." *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, at *7 (D.N.J. Mar. 31, 2014). The Court's analysis regarding § 1983 therefore applies with equal force to Plaintiff's claims under the NJCRA. *See Adams v. N.J. Dept. of Corr.*, No. 21-12482, 2022 WL 1442174, at *3 n.4 (D.N.J. May 5, 2022).

Second, the Moving Defendants argue, and Plaintiff concedes, that Plaintiff cannot predicate the § 1983 claims against them on a *respondeat superior* theory of liability. *See* Defs. Mov. Br. at 8-9, ECF No. 108-1; Pl. Opp. Br. at 26, ECF No. 121. While the Moving Defendants' general contention is correct, *see Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015), the Court has already dismissed Plaintiff's § 1983 claims against the State of New Jersey, DOC, DOH, ADTC, STU, and Hicks and Royce in their official capacities on the grounds that they are not "persons" amenable to suit under § 1983. The Moving Defendants' second argument is therefore moot.[3]

The Moving Defendants next argue, and Plaintiff again concedes, that claims against them for intentional torts must be dismissed because they are barred by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1 *et seq.* Defs. Mov. Br. at 10, ECF No. 108-1; Pl. Opp. Br. at 26, ECF No. 121. The Moving Defendants' argument focuses on Plaintiff's claim for intentional infliction of emotional distress ("IIED") (Count XV), but the Court also considers the argument as it applies to Plaintiff's claim for assault and battery (Count II).[4] Lastly, the Court considers the Moving Defendants' argument that Plaintiff fails to allege facts demonstrating Hicks and Royce were personally involved in attacking Smith and denying him medical care to sustain an IIED claim against them in their individual capacities. Defs. Mov. Br. at 10-11, ECF No. 108-1.

Assault and battery and IIED are torts that require a showing of intentional or willful misconduct. *See Pinson v. Perera*, No. 19-17227, 2020 WL 3542383, at *5 (D.N.J. June 30, 2020); *Grandizio v. Smith*, No. 14-3868, 2015 WL 58403, at *7 (D.N.J. Jan. 5, 2015). Under the NJTCA, "a public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (citing N.J.S.A. § 59:2-10). New Jersey courts have construed this provision to mean "there can be no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of *respondeat superior* does not apply." *Id.* (citing *McDonough v. Jorda*, 519 A.2d 874, 880 (N.J. Super. Ct. App. Div. 1986)); *Biaggi-Pacheco v. City of Plainfield*, No. 16-3511, 2017 WL 4618751, at *4 (D.N.J. Oct. 13, 2017). As the State of New Jersey, DOC, DOH, ADTC, STU, and Hicks and Royce in

---

[3] The Moving Defendants have not advanced a sufficient argument as to why Plaintiff's § 1983 claims against Hicks and Royce in their individual capacities, to the extent those claims are predicated on a theory of supervisory liability, should be dismissed. *See* Defs. Mov. Br. at 9, ECF No. 108-1. Any such claims alleged against Hicks and Royce in their individual capacities thus remain undisturbed.

[4] The Moving Defendants argued for the dismissal of the assault and battery claim (Count II) based on their inability to be sued under § 1983 or held liable under § 1983 on the basis of *respondeat superior*. Defs. Mov. Br. at 7-8, ECF No. 108-1. This claim is not pleaded as a § 1983 claim, however, and is expressly captioned as a common law assault and battery claim. SAC ¶¶ 219-225. The Court therefore addresses Plaintiff's claim for assault and battery (Count II) in the context of the Moving Defendants' NJTCA argument.

their official capacities qualify as public entities, they cannot be held liable for either assault and battery or IIED. *See Adams v. N.J. Dep't of Corr.*, No. 11-2482, 2022 WL 1442174, at *6 (D.N.J. May 5, 2022) (dismissing assault and battery and IIED claims against DOC officers in their official capacities as barred by the NJTCA); *Pinson*, 2020 WL 3542383, at *5 (dismissing IIED claim against the DOC as barred by the NJTCA); Grandizio, 2015 WL 58403, at *7 (dismissing assault and battery claim against a municipal entity as barred by the NJTCA). Plaintiff's claims for assault and battery (Count II) and IIED (Count XV), to the extent they are alleged against the State of New Jersey, DOC, DOH, ADTC, STU, and Hicks and Royce in their official capacities, are dismissed with prejudice accordingly.

Plaintiff's IIED claim (Count XV) is further dismissed, without prejudice, as against Hicks in his individual capacity but may proceed as against Royce in his individual capacity. The crux of Plaintiff's allegations against Hicks is that in his policy-making role as Commissioner of the DOC, he recruited and retained corrections officers with known histories of misconduct against inmates; routinely failed to train, supervise, and discipline the officers to prevent future misconduct; and perpetuated a practice or custom of allowing and encouraging corrections officers' physical abuse of inmates and residents at the STU, ADTC, and other DOC-run facilities. The SAC otherwise lacks factual allegations demonstrating that Hicks was personally involved in physically attacking Smith or denying him medical care. In contrast, the SAC sets forth allegations that Royce was personally involved in the underlying incidents, specifically that he observed or participated in the attacks, failed to intervene, conspired with corrections officers and medical personnel to cover up the incidents and place Smith in a solitary confinement cell, and denied Smith critical medical care. *See* SAC ¶¶ 35, 99, 157.

Finally, the Moving Defendants seek dismissal of Plaintiff's § 1983 First Amendment retaliation claim (Count XIV). All § 1983 claims against the State of New Jersey, DOC, DOH, ADTC, STU, and Hicks and Royce in their official capacities have been dismissed. As to Hicks and Royce in their individual capacities, the Moving Defendants reiterate their argument that the claim must be dismissed because the SAC fails to allege that they were personally involved in the incidents leading to Smith's death. Defs. Mov. Br. at 11-12, ECF No. 108-1. The Court finds that Plaintiff's claim fails for a more fundamental reason, however: Plaintiff has not pleaded Smith was engaged in constitutionally protected conduct.

A prisoner alleging First Amendment retaliation must sufficiently plead three elements: "(1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the [officials'] decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (quotation marks omitted). A prisoner's lodging of a written or oral grievance qualifies as constitutionally protected conduct under the First Amendment.

*See Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Here, Plaintiff alleges that all Defendants, collectively, physically attacked Smith and withheld medical care in retaliation for him "muttering under his breath" to a corrections officer, "You can't go into my room and just take stuff out of my room." SAC ¶¶ 59-73, 362-363; *see also* Pl. Opp'n Br. at 35, ECF No. 121. Plaintiff attempts to liken Smith's verbal statement to a constitutionally protected oral grievance made to a prison official, but the Court finds the two readily distinguishable. For instance, in *Mack v. Warden Loretto FCI*, a prisoner brought a First Amendment retaliation claim alleging that he was fired from his commissary position after he orally complained to prison officials about religious harassment he endured at work from certain corrections officers. 839 F.3d at 292. The Third Circuit concluded that the prisoner's oral grievance was entitled to constitutional protection because the allegations made clear that his "oral grievance sufficiently and timely put prison officials on notice that he was seeking redress, was conveyed to prison officials in a reasonable manner, and concerned conduct that the prison itself prohibits." *Id.* at 298-99.

Here, Smith's "muttering under his breath" to a corrections officer, "You can't go into my room and just take stuff out of my room," does not rise to the same level as the oral grievance addressed in *Mack*. Plaintiff's allegations describe only a "brief and isolated verbal [encounter]" with a corrections officer, which courts have found "does not constitute protected First Amendment speech. To construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment." *Oriakhi v. Wood,* No. 05-53, 2006 WL 859543, at *5 (M.D. Pa. Mar. 31, 2006); *see Carl v. Griffin*, No. 08-4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) (verbal confrontation with prison official in which plaintiff shook his head and uttered "unbelievable I cant [sic] believe him" did not constitute protected First Amendment speech); *see also Wilson v. Unknown Budgeon*, 248 F. App'x 348, 350 (3d Cir. 2007) ("Expressing an opinion about which television channel to select is not protected speech."). Accordingly, as Plaintiff has not alleged that Smith was engaged in constitutionally protected conduct, she fails to plead the first element of her § 1983 First Amendment retaliation claim (Count XIV). Because any further amendment of this claim would be futile, this claim is dismissed with prejudice as to all Defendants.

### B. Moving Defendants' Rule 12(f) Motion to Strike

The Court turns next to the Moving Defendants' motion to strike paragraphs 182 through 205 of the SAC pursuant to Rule 12(f). ECF No. 107. Rule 12(f) provides that a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although the Court has broad discretion in resolving motions to strike" under Rule 12(f), *Estate of Cotton v. Senior Planning Servs., LLC*, No. 19-8921, 2020 WL 7022740, at *20 (D.N.J. Nov. 30, 2020), such motions are

highly disfavored and should generally be denied "unless the moving party shows that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009), *as amended* (July 6, 2009) (quoting *Garlanger v. Verbeke,* 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). "When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1292 (D. Del. 1995) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 695-96 (2d ed. 1990)); *accord. Onyejekwe v. Uber Techs., Inc.*, No. 19-10196, 2020 WL 2832566, at *3 (D.N.J. June 1, 2020).

Paragraphs 182 through 205 of the SAC span ten pages and allege prior and subsequent instances of misconduct by the DOC and corrections officers against inmates at New Jersey prisons between 2005 and 2018. The series of paragraphs begins by alleging that the DOC and Hicks "are currently the subject of significant media attention with regards to Hick's failure to protect inmates and residents in [DOC] custody . . . . " SAC ¶ 182. The paragraphs go on to describe how a number of named corrections officers were charged with or pleaded guilty to assault, official misconduct, and tampering with public records in connection with incidents of physical and sexual abuse against female inmates at the Edna Mahan Correctional Facility, a New Jersey prison for women. SAC ¶¶ 182-190. The paragraphs also describe a number of lawsuits by inmates at other New Jersey prisons, including the ADTC, claiming that corrections officers physically attacked them, failed to intervene, denied them subsequent medical care, and attempted to cover up the abuse by, among other things, falsifying the incident reports. *Id.* ¶¶ 191-205.

The Moving Defendants argue that these paragraphs should be stricken from the SAC as "immaterial, impertinent, and . . . scandalous" because they are unrelated to Smith's death, involve different state-run facilities, and concern many allegations outside Hick's tenure as Commissioner of the DOC and Royce's tenure as Warden of the STU and ADTC. Defs. Mov. Br. at 3-5, ECF No. 107-1. While the Court is unable to discern from the SAC or the parties' briefing precisely which incidents described in paragraphs 182 through 205 occurred during Hicks or Royce's tenure in their respective roles, the Court finds that the allegations in these paragraphs nonetheless "serve to achieve a better understanding of [Plaintiff's] claims." *Onyejekwe*, 2020 WL 2832566, at *4. Namely, the allegations seek to demonstrate a widespread pattern of inmate abuse at DOC facilities, such that Smith's death "was not an isolated or aberrational incident but . . . the direct result of systemic deficiencies in training, supervision, and discipline of [corrections officers]," for which officials like Hicks and Royce were responsible for overseeing and making policy. Pl. Opp. Br at 7-9, ECF No. 120. Overall, paragraphs 182 through 205 "are not 'so unrelated to [plaintiff's] claims as to be unworthy of any consideration.'" *Onyejekwe*, 2020 WL 2832566, at *5 (quoting *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa.

2004)). The Moving Defendants' motion to strike these paragraphs is therefore denied at this time.

### III.   CONCLUSION

For the reasons set forth above, the Moving Defendants' motion to dismiss, ECF No. 108, is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** insofar as Plaintiff's § 1983 and NJCRA claims; assault and battery claim (Count II); and IIED claim (Count XV) alleged against the State of New Jersey, DOC, DOH, ADTC, STU, and Hicks and Royce in their official capacities, are **DISMISSED** with prejudice. Plaintiff's First Amendment retaliation claim (Count XIV) is likewise **DISMISSED** with prejudice in its entirety as to all Defendants. Plaintiff's IIED claim (Count XV) alleged against Hicks in his individual capacity is **DISMISSED** without prejudice. The Moving Defendants' motion is **DENIED** insofar as Plaintiff's IIED claim (Count XV) alleged against Royce in his individual capacity may proceed.

Further, the Moving Defendants' motion to strike paragraphs 182 through 205 of the SAC, ECF No. 107, is **DENIED**.

An appropriate Order accompanies this Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 26, 2022**